# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:08CV-142-M

STEVE BLACK                                                                                    PLAINTIFF

V.

DIXIE CONSUMER PRODUCTS LLC and
GEORGIA-PACIFIC CONSUMER PRODUCTS
HOLDINGS, LLC                                                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants for summary judgment [DN 14] and on a motion by Plaintiff for partial summary judgment [DN 15]. Fully briefed, these matters are ripe for decision. For the reasons set forth below, Defendants' motion for summary judgment [DN 14] is granted and Plaintiff's motion for partial summary judgment is denied [DN 15].

## I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

On July 11, 2008, Plaintiff, Steve Black, sustained an injury while on the business premises of Dixie Consumer Products LLC in its Bowling Green, Kentucky, plant. (Complaint at ¶ 4.) Plaintiff was in the Dixie Consumer Products facility to deliver a shipment of rolled paper materials to the plant. While Plaintiff was on the loading dock, an employee of Dixie Consumer Products who was unloading the truck ran over Plaintiff with a forklift/tow motor. Plaintiff sustained an injury to his left foot resulting in a below-the-knee amputation of his leg. At the time of the accident, Plaintiff was employed by Western Express, Inc., a commercial carrier that had contracted for shipping services with Georgia-Pacific LLC. (Contract Carriage Agreement, Exhibit B of Defendants' Motion.) The subject shipment occurred under the terms of this contract. Dixie Consumer Products is a subsidiary of Georgia-Pacific. (Complaint at § 2.)

Following his injury, Plaintiff pursued a workers' compensation claim against his employer, Western Express. Plaintiff testified that he was acting within the course of his employment with Western Express when he sustained his injuries. Western Express secured the payment of workers' compensation for Plaintiff as part of his employment with that company for the injuries sustained as a result of the accident.

In October of 2008, Plaintiff filed suit against Dixie Consumer Products and Georgia-Pacific alleging that he was "negligently injured by the agents, servants, and employees of Defendants." (Complaint at ¶ 4.) Defendants filed responsive pleadings denying liability for the injuries sustained by the Plaintiff. In addition, Defendants affirmatively plead that Plaintiff's claims are barred by the exclusive remedy sections of the Kentucky Workers' Compensation Act. Defendants argue that they are "statutory employers" within the provisions and definitions in KRS § 342.610(2)(b) and KRS § 342.690. Pursuant to the scheduling order, the parties have taken discovery on the statutory employer defense and have now filed cross-motions for summary judgment on this issue.

### III. DISCUSSION

Defendants assert that the Plaintiff's complaint against them is barred by the exclusive remedy of workers' compensation. Plaintiff disagrees arguing that KRS § 342.610(2) is not applicable. Specifically, Plaintiff argues that the statutory employer defense is preempted by the Federal Motor Carrier Safety Act. In addition, Plaintiff argues that the Defendants failed to establish that they are statutory employers within the express provisions of the Kentucky Workers' Compensation statute at issue, KRS § 342.610(2)(b).

**A. Federal Motor Carrier Safety Act Preemption**

Plaintiff asserts that the Federal Motor Carrier Safety Act ("FMCSA"), 49 U.S.C. § 31131, et. seq., preempts portions of the Kentucky Workers' Compensation Act, specifically KRS § 342.610(2)(b)[1]. Plaintiff argues that the FMCSA defines employer and employee and sets forth the

---

[1] KRS § 342.610(2) provides in part as follows:
A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this

duties of each under the FMCSA. Plaintiff contends that Defendants are not employers within the meaning of the FMCSA. 49 U.S.C. § 31132(2). As a result, Plaintiff argues that by classifying him as Defendants' statutory employee under KRS § 342.610(2)(b), the Kentucky Workers' Compensation Act usurps the FMCSA's definition of employer and employee under circumstances where Defendants have no safety obligations to commercial drivers. In essence, Plaintiff contends that Congress intended the FMCSA to fully occupy the parameters of motor carrier employment and, therefore, the Kentucky Workers' Compensation Act is preempted by the FMCSA.

Preemption can generally occur in three ways: (1) where Congress has expressly preempted state law, (2) where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or (3) where federal law conflicts with state law. Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 313 (2d Cir. 2005)(citing Barnett Bank of Marion County v. Nelson, 517 U.S. 25, 31 (1996)). See also Interstate Towing Ass'n, Inc. v. City of Cincinnati, Ohio, 6 F.3d 1154, 1161-1162 (6th Cir. 1993)(Court should begin with the assumption that "Congress did not intend to displace state law" and "that the historic police powers of the States were not to be superseded by . . . Federal [law] unless that was the clear and manifest purpose of Congress.").

Not surprisingly, Plaintiff has not directed the Court to any case finding a state workers' compensation statute to be preempted by the FMCSA and its regulations. In fact, courts have

---

chapter. . . . A person who contracts with another: . . .
(b) To have work performed of a kind which is a regular or recurrent part of the
work of the trade, business, occupation, or profession of such person
shall for the purposes of this section be deemed a contractor, and such other person
a subcontractor. . . .
KRS § 342.610(2).

consistently held that workers' compensation is a traditional area of state authority that is not preempted by federal law. See Judy v. Tri-State Motor Transit Co., 844 F.2d 1496, 1502 (11th Cir. 1988)("Although there exists a definite federal interest in maintaining a safe highway system, the federal interest does not extend into the operation of state workers' compensation laws."); Saylor v. Parker Seal Co., 975 F.2d 252, 255-56 (6th Cir. 1992)(ERISA did not preempt Kentucky law allowing offsets of workers' compensation payments against employee benefits plan payments); Anderson v. Homeless & Housing COA, 135 S.W.3d 405, 410 (Ky. 2004)(holding that there is no clear indication that Congress intended the National and Community Service Act to preempt state workers' compensation law).

In the present case, the Court finds that the FMCSA does not preempt a finding of immunity from state tort liability on the basis of the exclusive remedy provision of the Kentucky Workers' Compensation Act. See KRS § 342.610(2)(b), KRS § 342.690. Congress with the enactment of the FMCSA did not expressly preempt state workers' compensation law. Additionally, it is clear that Congress did not intend to occupy the field of workers' compensation benefits for operators of commercial motor carriers. Cf. Interstate Towing Ass'n, Inc. v. City of Cincinnati, Ohio, 6 F.3d 1154, 1160 (6th Cir. 1993)(FMCSA does not establish a complete and comprehensive scheme regulating safety standards for commercial transportation). The FMCSA and its regulations establish minimum Federal safety standards for commercial motor vehicles and their operators. Plaintiff points to no FMCSA statute or regulation addressing compensation of workers injured in the course of their employment, especially where the injured worker seeks compensation pursuant to state tort law.

Finally, there is no conflict between the application of the exclusive remedy provision of the

Kentucky Workers' Compensation Act and the FMCSA. A conflict occurs when compliance with both federal and state law is a physical impossibility or where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Gade v. National Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992). The FMCSA and its regulations establish minimum Federal safety standards for commercial motor vehicles and their operators. See 49 U.S.C. § 31136(a),(a)(3). In defining the terms "employer" and "employee," Congress identified commercial carriers and operators subject to the safety requirements of the FMCSA. Whether Georgia-Pacific or Dixie qualifies as a contractor for purposes of the Kentucky Workers' Compensation Act does not prevent compliance with the FMCSA by the commercial carriers and operators identified under that Act or reduce highway safety. Simply put, application of the exclusive remedy provision of the Kentucky Workers' Compensation Act neither frustrates nor prevents the accomplishment or execution of federal safety standards for commercial vehicles or their operators. There being no conflict, the Court denies Plaintiff's motion for partial summary judgment on this issue.

**B. Exclusive Remedy of the Workers' Compensation Act**

KRS §342.690(1) provides that if an employer secures payment of workers' compensation under Chapter 342, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer . . . ." For purposes of this section, "the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation." Granus v. North Am. Philips Lighting Corp., 821 F.2d 1253 (6th Cir. 1987).

KRS §342.610(2) provides in part as follows:

6

> A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. . . . A person who contracts with another: . . .
> (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person
>
> shall for the purposes of this section be deemed a contractor, and such other person a subcontractor. . . .

KRS §342.610(2).

"The purpose of the provision of KRS 342.610 that a contractor is liable for compensation benefits to an employee [of] a subcontractor who does not secure compensation benefits is to prevent subcontracting to irresponsible people." Fireman's Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459, 461 (Ky. 1986). By the same token, "if a defendant qualifies as a contractor, 'it has no liability in tort to an injured employee of a subcontractor' once worker's compensation benefits are secured." Giles v. Ford Motor Co., 126 Fed. Appx. 293, 295 (6th Cir. April 4, 2005)(quoting Fireman's Fund, 705 S.W.2d at 461). Essentially, "the Act treats the employees of a subcontractor as *de jure* employees of the contractor for the purposes of guaranteeing worker's compensation benefits." Giles, 126 Fed. Appx. at 295.

Defendants assert that the Plaintiff's complaint against them is barred by the exclusive remedy of workers' compensation. Plaintiff disagrees arguing that the Defendants failed to establish that they qualify as a statutory employer within the express provisions of the Kentucky Workers' Compensation statute at issue. Specifically, Plaintiff contends that neither Georgia-Pacific nor Dixie are the statutory employer of Plaintiff because no contractor/subcontractor relationship existed between Defendants and Western Express within the meaning of KRS §342.610(2) and because Plaintiff was not performing work that was a regular or recurring part of the work of Defendants.

7

### 1. Contractor/Subcontractor Relationship

First, with respect to Georgia-Pacific, Plaintiff argues that the contractual transaction between Georgia-Pacific and Western Express is a simple arm's length first-party/second-party agreement for independent shipping services and does not create a contractual agreement between a general contractor and a subcontractor as required by KRS § 342.610(2). Contrary to Plaintiff's argument, a typical contractor/subcontractor relationship is not necessary to classify a defendant as a "contractor" as defined by KRS § 342.610(2)(b). Instead, the language of that statute provides that a contractor is one who contracts with another "[t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." KRS § 342.610(2)(b); Wright v. Dolgencorp, Inc., 161 S.W.3d 341, 343-344 (Ky. Ct. App. 2004) (retailer that hired a trucking company to transport merchandise from a distribution center owned and operated by a subsidiary to retail stores was held to be a contractor and trucking company a subcontractor, and thus retailer was immune from tort liability pursuant to the exclusive remedy provision in KRS §342.690(1)). Plaintiff concedes that Georgia-Pacific contracted directly with Western Express to provide shipping and transportation services for Georgia-Pacific and any Georgia-Pacific subsidiaries. The record reflects that at the time of the accident, Plaintiff was an employee of Western Express, Inc., and was delivering raw paper material to the Bowling Green Dixie facility under the terms and in accordance with the Contract Carriage Agreement. (Jeff Gottke Dep. at 26-27.) Thus, having contracted with Western Express to have work performed, Georgia-Pacific can qualify as a "contractor" under KRS § 342.610(2).

Second, with respect to the relationship between Dixie and Western Express, Plaintiff argues that Dixie is a wholly independent subsidiary that is not a party to the contract in question and,

8

therefore, cannot be said to be "a contractor who subcontracts" within KRS § 342.610(2). Contrary to the Plaintiff's argument, KRS § 342.610 and KRS § 342.690 do "not demand evidence of formal written contracts between a defendant and the plaintiff's direct employer for the defendant to have up-the-ladder immunity but, rather, shows that contracts might be found in this context when the facts show that the defendant is effectively functioning as the contractor." Beaver v. Oakley, 279 S.W.3d 527, 534 (Ky. 2009); United Engineers & Constructors, Inc. v. Branham, 550 S.W.2d 540 (Ky. 1977)("Whether that arrangement justifies the inflexible label of 'subcontract' as it might be considered apart from the compensation statutes we need not decide. Under those statutes, however, we think that it does."). The Kentucky Supreme Court instructs courts in examining KRS § 342.610 to "construe the role of contractor in a practical and functional-not hypertechnical-way." Id.

In the present case, despite the lack of a direct written contract between Dixie and Western Express, Dixie functioned as a contractor as a practical matter. Beaver, 279 S.W.3d at 532. The record reflects that Dixie is a subsidiary of Georgia-Pacific. At the time of the Plaintiff's accident, Georgia-Pacific had an active contract with Western Express to provide shipping services for it and its subsidiaries. (Contract Carriage Agreement, ¶ 2.) Specifically, Paragraph 3 of the Contract Carriage Agreement provides that: "From time to time during the term of this Agreement, GP and any GP subsidiary may engage CARRIER to provide transportation services." (Contract Carriage Agreement, ¶ 3.) Thus, as a subsidiary of Georgia-Pacific, Dixie was allowed to utilize the services of Western Express to deliver raw materials to its Bowling Green facility on the day in question. Jeff Gottke, Plant Director of the Bowling Green Dixie facility, testified that the load being hauled by Plaintiff Black on the date in question was made pursuant to the terms and conditions stated in the Contract Carriage Agreement. (Jeff Gottke Dep. at 26-27.) Mr. Gottke testified that Dixie

9

requested and received the shipment of raw paper products in question. Id. Specifically, Mr. Gottke explained that shipments of raw paper products for the facility are arranged through "our Green Bay transportation office." (Jeff Gottke Dep. at 19.) According to Mr. Gottke, Dixie "request[s] shipments . . . to go out and request[s] shipments to come in" through a computer program called S.A.P. (Id. at 19.) The Green Bay transportation office monitors Dixie's raw paper product demands for the month through the S.A.P. program, examines the demands at the Dixie facilities, schedules the raw paper production at the mills, and then schedules shipment to the Dixie facilities. When the shipment of raw paper products arrives at the Dixie facility, a Dixie employee instructs the driver which loading dock to back into, examines the bill of lading, and signs the bill of lading upon completion of the unloading. (Id. at 22.) Essentially, Dixie "contracted" the services of Western Express to have raw paper materials delivered to the Bowling Green facility. Accordingly, Dixie may be considered a contractor under KRS § 342.610(2), so long as the work contracted was a "regular or recurrent" part of the business of Dixie.

## 2. Regular or Recurrent Activities

The remaining issue is whether the work being performed by the Plaintiff, as an employee of Western Express, was a "regular or recurrent" part of Defendants' business under KRS § 342.610(2)(b). KRS § 342.610(2)(b) provides that a contractor is one who contracts with another "to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." KRS § 342.610(2)(b). Under Kentucky law, "recurrent" simply means occurring again or repeatedly. Daniels v. Louisville Gas & Elec. Co., 933 S.W.2d 821, 924 (Ky. Ct. App. 1996); Pennington v. Jenkins-Essex Constr., Inc., 238 S.W.3d 660, 664 (Ky. Ct. App. 2006). "Regular" generally means customary or normal, or happening at fixed

intervals. Id. See also General Elec. Co. v. Cain, 236 S.W.3d 579, 588 (Ky. 2007)("It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees."). Contrary to Plaintiff's argument, "[e]ven though [a Defendant] may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." Fireman's Fund, 705 S.W.2d at 462. Thus, the fact that a defendant did not ordinarily perform the work itself, but usually subcontracted the work to others is a "distinction ... of no significance" under the statutes. Granus, 821 F.2d at 1257.

Courts have routinely found that transportation and distribution of materials is a "regular or recurrent" part of business operations. Dean v. Dow Corning Corp., 2009 WL 995469, *4 (E.D. Ky. April 14, 2009)(transportation of company's raw, intermediate, and finished silicon materials is regular and recurrent part of Dow Corning's business); Smothers v. Tractor Supply Co., 104 F. Supp.2d 715, 718 (W.D. Ky. 2000)(transporting merchandise from a central storage facility to retail stores is a regular or recurrent part of operating a nationwide retail store); Sharp v. Ford Motor Co., 66 F. Supp. 2d 867, 869-870 (W.D. Ky. 1998)(Ford's regular business is not only the assembly of vehicles, but also the distribution of the vehicles assembled including loading and unloading the vehicles in preparation for the distribution); Wright v. Dolgencorp, Inc., 161 S.W.3d 341, 343-344 (Ky. Ct. App. 2004) (retailer that hired a trucking company to transport merchandise from a distribution center owned and operated by a subsidiary to retail stores was held to be a contractor and trucking company a subcontractor).

In the present case, it is undisputed that Georgia-Pacific had an active contract with Western

Express to provide shipping services of its products and materials for it and its subsidiaries. (Contract Carriage Agreement ¶ 2). In fact, the Contract specifically provided that Georgia-Pacific "in the usual and ordinary conduct of its business requires transportation by motor carrier of its products, materials, and equipment." (Id.) At the time of the accident, Plaintiff was delivering raw paper material pursuant to the Contract. (Jeff Gottke Dep. at 26-27.) In light of the above case law, the Court finds that the hauling of raw paper products is a regular or recurrent part of Georgia-Pacific's business.

Similarly, the Court finds that the delivery of raw paper materials to Dixie is a regular and recurrent part of Dixie's business. The record reflects that raw paper is shipped from a mill to a Dixie plant, such as the one in Bowling Green, where it is then turned into either paper cups or paper plates for sale to the public. (Gottke Dep. at 12, 15.) Mr. Gottke testified that the volume of shipments from mills to Dixie plants is so great that Dixie uses commercial transport companies, such as Western Express, to move the product between its plants. According to Mr. Gottke, the Dixie plant in Bowling Green receives approximately 50 truck shipments of its raw paper materials in an average week. (Id. at 22.) Mr. Gottke testified that Dixie does not perform the actual shipping with its own personnel itself, but instead relies on commercial carriers to do the shipping of these materials and has done so for a number of years. (Id. at 20.) The moving of these products is integral to the worked performed at the Dixie plant in Bowling Green. Thus, based on the record before the Court, and the cases discussed above, the Court finds that there is no genuine issue of material fact that Dixie's use of commercial shipping services to transport raw paper materials from, to, or between the Dixie facilities is a regular or recurrent part of Dixie's operation.

Having concluded that the Defendants contracted with Western Express to perform "work

12

of a kind which is a regular or recurrent part" of Defendants' business, Defendants are deemed to be contractors within the meaning of the Kentucky Workers' Compensation Act. Thus, Plaintiff's complaint is barred by the exclusive remedy of workers' compensation, and the Defendants' motion for summary judgment is granted.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants for summary judgment [DN 14] is **GRANTED** and the motion by Plaintiff for partial summary judgment [DN 15] is **DENIED**. The Court will enter a judgment consistent with this Opinion.

cc: counsel of record