UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:08CV-00142-JHM

STEVE BLACK                                                                                              PLAINTIFF

V.

DIXIE CONSUMER PRODUCTS LLC and
GEORGIA-PACIFIC CONSUMER PRODUCTS
HOLDINGS, LLC                                                                                   DEFENDANTS/
                                                                                        THIRD-PARTY PLAINTIFFS

V.

WESTERN EXPRESS, INC.                                                         THIRD-PARTY DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a renewed motion by Defendants, Dixie Consumer Products LLC and Georgia-Pacific Consumer Products Holdings LLC, for summary judgment against Plaintiff Steve Black [DN 84]; a renewed motion by Third-Party Defendant, Western Express, Inc., for summary judgment against Third-Party Plaintiffs, Dixie Consumer Products LLC and Georgia-Pacific Consumer Products Holdings LLC, [DN 112]; and a motion in limine by Plaintiff, Steve Black, to exclude the expert witness testimony of Charles W. Clowdis, Jr., pursuant to Fed. R. Evid. 702 [DN 100]. Based on the arguments made by the parties, the Court requested additional briefing. The parties tendered their additional briefs. [DN 122, DN 123, DN 124, DN 127, DN 128, DN 133]. Fully briefed, these matters are ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the

basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

On July 11, 2008, Plaintiff, Steve Black, sustained an injury while on the business premises of Dixie Consumer Products LLC (hereinafter "Dixie") in its Bowling Green, Kentucky, plant. Plaintiff was at the Dixie facility to deliver a shipment of rolled paper materials to the plant. While Plaintiff was on the loading dock, an employee of Dixie who was unloading the truck ran over Plaintiff with a forklift/lift truck. Plaintiff sustained an injury to his left foot resulting in a below-the-knee amputation of his leg. At the time of the accident, Plaintiff was employed by Western Express, Inc., a commercial carrier that had contracted for shipping

services with Georgia-Pacific LLC, Dixie's parent corporation. Jeff Gottke, Dixie's Bowling Green Plant Director, testified that the subject shipment occurred under the terms of this contract.

Following his injury, Plaintiff pursued a workers' compensation claim against his employer, Western Express. Plaintiff testified that he was acting within the course of his employment with Western Express when he sustained his injuries. Western Express secured the payment of workers' compensation for Plaintiff as part of his employment with that company for the injuries sustained as a result of the accident.

In October of 2008, Plaintiff filed suit against Dixie Consumer Products and Georgia-Pacific Consumer Products Holdings alleging that he was "negligently injured by the agents, servants, and employees of Defendants." (Complaint at ¶ 4.) Defendants filed responsive pleadings denying liability for the injuries sustained by the Plaintiff. In addition, Defendants affirmatively pleaded that Plaintiff's claims are barred by the exclusive remedy sections of the Kentucky Workers' Compensation Act. Defendants argued that they are "statutory employers" within the provisions and definitions in KRS § 342.610(2)(b) and KRS § 342.690. The Court entered a scheduling order allowing for discovery to be taken on the statutory employer defense. The parties then filed cross-motions for summary judgment on this threshold issue.

The Court granted summary judgment in favor of the Defendants finding that the Plaintiff's complaint against them was barred by the exclusive remedy of workers' compensation. The Court found that transportation of raw paper materials to Dixie is a regular and recurrent part of Dixie's business operations. Plaintiff appealed to the Sixth Circuit. A three-judge panel of the Sixth Circuit reversed the summary judgment entered by the Court and remanded the case for further proceedings. The Sixth Circuit concluded that because Dixie and Georgia Pacific Consumer Products Holdings had not established that the work Black performed

at the time of his injury was a "regular or recurrent" part of its work, Defendants were not entitled to judgment as a matter of law. On remand, the Plaintiff was allowed to amend his complaint against the Defendants. The Defendants were permitted to file a third-party complaint against Western Express for breach of contract for failing to defend and indemnify them in this case pursuant to the Contract Carriage Agreement. Western Express filed a counterclaim against Defendants/Third-Party Plaintiffs alleging a subrogation claim for the workers' compensation benefits secured for Plaintiff.

On April 30, 2014, the Court denied Western Express' motion for summary judgment on the third-party claim asserted against it by Dixie and Georgia-Pacific Consumer Products Holding. The Court rejected Western Express' lack of privity argument finding that the Contract Carriage Agreement expressly intended for the Georgia-Pacific subsidiaries to be direct beneficiaries of the agreement. The Court also concluded that Western Express had not established that Plaintiff's accident was "solely caused" by Defendants to extinguish Western Express' obligation to indemnify.

Dixie, Georgia Pacific Consumer Products Holdings, and Western Express have renewed their motions for summary judgment. The Court shall address each motion.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Dixie and Georgia Pacific Consumer Products Holdings[1], have renewed their motion for summary judgment on Plaintiffs' claims arguing that they have developed the proof

---

[1] Initially, a clarification of the Defendants' corporate organizational structure must be made. The record reflects that Dixie is a subsidiary of Georgia-Pacific LLC. (Mark Berry Dep. at 16.) Georgia-Pacific LLC has not been sued in this matter. Mark Berry, Defendants' corporate representative deponent, testified that Defendant, Georgia-Pacific Consumer Products Holding LLC, is a subsidiary of Georgia-Pacific LLC and acts as a holding company for various legal entities including Dixie and is the actual legal owner of Dixie. (Berry Dep. at 38.) As a result, because Georgia-Pacific Consumer Products Holdings had no operational function in the operation of the Dixie plant, the Defendants state that the statutory defense discussed in this opinion does not require a separate analysis for Georgia-Pacific Consumer Products Holdings. Plaintiff does not object to this statement and responds to the motion for summary judgment as it relates to Dixie.

4

on remand required by the Sixth Circuit to merit the granting of summary judgment on the statutory employer defense.  Specifically, Defendants maintain that there is uncontroverted proof in the record that (1) Plaintiff was injured while unloading trash and dunnage from the shipment he delivered to Dixie, and this is work that Dixie and similar businesses do with their own employees and (2)  according to Defendants' transportation industry expert, the transportation of raw materials between a supplier and a manufacturer is work that businesses similar to Dixie normally perform or are expected to perform with their own employees.  Plaintiff disagrees arguing that the Defendants failed to establish that they qualify as a statutory employer within the express provisions of the Kentucky Workers' Compensation statute at issue as outlined by the Sixth Circuit in <u>Black v. Dixie Consumer Products LLC</u>, 516 Fed. Appx. 412 (6th Cir. 2013).

### A.  Law

KRS § 342.610(2)(b) defines a "contractor" as "[a] person who contracts with another. . . [t]o have work performed of a kind which is a regular or recurrent part of the work of" that person's "trade, business, occupation, or profession." KRS § 342.610(2)(b).  "If a premises owner qualifies as a contractor under this provision, then it is 'deemed to be the statutory, or 'up-the-ladder,' employer[ ] of individuals who are injured while working on' the premises." <u>Dunn v. Corning, Inc.</u>, 575 Fed. Appx. 644, 646 (6th Cir. 2014)(quoting <u>General Elec. Co. v. Cain</u>, 236 S.W.3d 579, 585 (Ky. 2007)).  According to the Sixth Circuit, "the Kentucky Supreme Court has held that the relevant inquiry under the KWCA is not whether the injured worker is an employee or independent contractor, but rather whether 'the task the independent contractor is hired to perform' is a 'regular or recurrent part of the work of the trade, business, occupation, or profession' of the premises owner." <u>Black</u>, 516 Fed. Appx. at 415(citing <u>Cain</u>, 236 S.W.3d at 588).  The Sixth Circuit further explained that in order to find the work engaged in by Black a

regular or recurrent part Dixie's work, Dixie must demonstrate both that the type of work Black was engaged in "is a 'customary, usual, or normal' part of Dixie's business or 'work that [Dixie] repeats with some degree of regularity' *and* that it is work that Dixie or similar businesses would normally perform or be expected to perform with employees." Black v. Dixie Consumer Products LLC, 516 Fed. Appx. 412, 417 (6th Cir. 2013)(emphasis in original).

### B. Discussion

After a review of the case law and the parties' arguments, the Court finds that the Defendants do not qualify as contractors under KRS § 342.610(2)(b) and are not immune from tort liability under the Kentucky Workers' Compensation Act. In the present case, the Carriage Agreement specifies the scope of the agreement to include transportation services requiring Western Express to "transport and deliver shipments of contract freight." (Contract Carriage Agreement ¶ 3.) The Agreement classifies Western Express' work as freight transportation and delivery. While the Agreement places responsibility upon Western Express to inspect the vehicle for proper loading and securement of the vehicle at the origin of the shipment, it contains no requirements of unloading or dunnage removal. (Id. at ¶ 6(a).) Thus, the task Western Express was hired to perform was freight transportation and delivery.

While the Court recognizes that Black was on Dixie's premises in order to deliver raw paper materials to Dixie pursuant to the Contract Carriage Agreement between Western Express and Georgia-Pacific, the Sixth Circuit emphasized recently that the Court's inquiry "must focus on the actual work being performed at the time of the injury." Estate of Dohoney ex rel. Dohoney v. International Paper Co., 560 Fed. Appx. 564, 569 (6th Cir. 2014). See also Dunn, 575 Fed. Appx. at 647. Following the remand in this case, both Plaintiff Steve Black and forklift operator Larry Chinn testified that at the time of Black's injuries he was removing dunnage or

trash from the trailer and transporting it to the trash compactor. The Contract Carriage Agreement involved freight transportation and did not involve loading or unloading of the raw paper materials or dunnage. As noted above, to qualify as a contractor under KRS § 342.610(2), a person must "**contract with another** . . . to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person. . . ." (emphasis added.) Therefore, based on the testimony of Black and Chinn, at the time of his injuries Black was not engaged in any work for which Dixie had contracted or was hired to perform.[2]  KRS § 342.610(2)(b); Black, 516 Fed. Appx. at 415.

In support of their argument that Defendants are entitled to the protection of the statutory employer defense, Defendants maintain that dunnage unloading was part of Black's freight transportation work under the Contract Carriage Agreement between Western Express and Defendants. The Court disagrees. As discussed above, the Contract Carriage Agreement provides for freight transportation and delivery, not removal and disposal of dunnage. Additionally, Black's testimony refutes Defendants' argument that Black considered dunnage unloading a part of his freight transportation work under the Contract Carriage Agreement. At his deposition, Black testified that at the time of the accident he was on the loading dock "working and helping in the transportation of freight." (Black Dep. at 79.) Black explained that he was "getting rid of trash." Specifically, Black testified that he requested Chinn to permit him

---

[2]  If Western Express had been hired to perform the removal and disposal of dunnage, the testimony of Black, Chinn, and Plaintiff's experts support the conclusion that removal of dunnage or trash from the trailer and transporting it to the compactor is customary, usual, and normal part of Dixie's business and is work that Dixie would normally perform or be expected to perform with its own employees.  See Report of Ron Kirsch, DN 80-3 ("Even though Mr. Chinn knew that pedestrians have the right of way, he allowed Mr. Black to enter the loading dock area to assist him in removing debris from the trailer . . ." Id. at 10.)("Even though it was a frequent practice to allow pedestrians into the loading dock area near Dock # 22, to assist forklift operators in removing debris from trailers . . ." Id. at 11.)("Mr. Chinn authorized Mr. Black to work on the loading dock area." Id. at 13.); Report of David Johnson, DN 80-2 ("[I]t was 'common practice' to let drivers onto the loading dock and that Mr. Black was 'helping him out' by doing so." Id. at 12.)  (Kirsch Report at 8 ("Mr. Chinn reported in his deposition that the quickest way to unload the trailer was to have the driver take out the corrugate; otherwise, he [Chinn] would have to get off the forklift and do it each time after taking out a roll."); Johnson Report at 12 (same).)

7

to throw away trash and debris from the trailer: "what I explained to him was that I had gotten a preplan load behind this one.  And one of the requirements was – because it is a beer load – that I remove all trash and debris. . . . I approached him and I stated such.  And I requested if it was okay that I get rid of my trash . . . and use the compactor." (Id. at 80.)   Black further indicated that his obligation as a commercial trucker on behalf of Western Express was that the trailer had to be immaculate for the **next load**. (Id. at 81-82.)   In fact, Black acknowledged that Chinn should not have authorized him entrance onto the dock. (Id. at 111.)  Thus, while Defendants seize on Black's characterization of his role at the time of his injury as "the transportation part of the business" or "working and helping in the transportation of freight," a review of Black's deposition reflects that at the time he was unloading trash and debris from the trailer, he was actually engaged in preparing his trailer for his **next customer**.  By his own testimony, Black was not engaged in completing the transportation of freight of the paper rolls.

Further, the Court rejects Defendants' argument that no distinction should be made between the driving and unloading aspect of freight transportation in terms of determining the applicability of the statutory employer defense.  The cases relied upon by Defendants in support of their argument are either pre-Cain decisions and/or involve factual situations in which the injured party was engaged in work that his employer was hired to perform by the defendant.  Thus, the courts in those cases did not have to distinguish between the work the injured party was performing at the time of the injury and the work the employer was hired to perform.  KRS § 342.610 and the Sixth Circuit in Black clearly require the existence of a contract to perform a regular or recurrent part of a defendant's business before granting a premises owner immunity under the Kentucky Workers' Compensation Act.  The Court declines to ignore this statutory requirement.

Finally, Defendants argue that even if Black's driving and unloading work is viewed separately, Dixie has presented the unrebutted expert testimony of transportation industry veteran, Charles W. Clowdis, Jr., to show that the shipping work performed by Black is work that businesses similar to Dixie perform or are expected to perform with their own personnel. Focusing on the actual work being performed at the time of injury, Black was not engaged in any work for which Dixie had contracted. See Dohoney, 560 Fed. Appx. at 569. Accordingly, whether the transportation of raw paper materials between a supplier and Dixie is a "regular or recurrent" part of Dixie's work is no longer dispositive in determining whether Defendants would qualify as contractors under KRS § 342.610(2)(b) given the actual work being performed by Black at the time of his injury. See also Black, 516 Fed. Appx. at 415.

For these reasons, the Court denies the Defendants' motion for summary judgment.

## IV.  WESTERN EXPRESS' MOTION FOR SUMMARY JUDGMENT

Western Express also renews its motion for summary judgment on Third-Party Plaintiffs' claims arguing that (1) the Contract Carriage Agreement relieves Western Express of any obligation to defend Dixie and Georgia-Pacific Consumer Products Holdings for personal injury caused solely by their negligence and (2) in the alternative, the injury to Plaintiff did not arise out of the performance of the Contract Carriage Agreement.[3] Dixie and Georgia-Pacific Consumer Products Holdings filed a cross-motion for summary judgment against Western Express on the contractual claim. With agreement of the parties, Magistrate Judge Brent Brennenstuhl held in abeyance the Dixie and Georgia-Pacific Consumer Products Holdings' motion related to the contract dispute pending the Court's decision on the remaining motions and instructed the parties

---

[3] In as much as Western Express incorporates by reference each of its arguments set forth in its previously filed motion for summary judgment, the Court adopts its previous decision regarding Western Express' lack of privity argument and finds that the contract carriage agreement expressly intended for the Georgia-Pacific subsidiaries to be direct beneficiaries of the agreement.

to complete briefing on the "duty to defend" portion of the Western Express' motion for summary judgment.

The Contract Carriage Agreement provides a defense to Georgia-Pacific and its subsidiaries for the injury of a person "arising out of or predicated upon the operation of trucks of or by CARRIER, its agents or employees, or the conduct of the business of CARRIER, or the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise." (Contract Carriage Agreement ¶ 7.)[4] Dixie and Georgia-Pacific Consumer Products Holdings seek a defense from the lawsuit predicated upon (1) the operation of trucks by Western Express; (2) the conduct of Western Express' business; and (3) the transportation of and handling of goods by Western Express. (Third-Party Plaintiffs Surreply at 6 [DN 123].)

Under Delaware law, contract interpretation initially presents a question of law. Lorillard Tobacco Co. v. American Legacy Foundation, 903 A.2d 728, 739 (Del. Super. 2006). By reviewing the entire contract, the court must determine whether the contract is ambiguous.

---

[4] Paragraph 7 of the Agreement, entitled "Indemnification," provides in relevant part for:
> CARRIER agrees to assume all risks growing out of or occurring in the performance of this Agreement by CARRIER, its agents or employees for: . . .
> (b) any death or injury to any person or persons, whether or not employed by the CARRIER, however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed as a result of negligence on the part of the carrier, except when caused by the sole negligence, or intentional acts of GP, its agents and employees.
> (c) CARRIER further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify GP from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by CARRIER, its agents or employees, or the conduct of the business of CARRIER, or the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise, provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was solely caused by any negligent act or omission of GP.

(Contract Carriage Agreement ¶ 7.)

Pisano v. Delaware Solid Waste Authority, 2006 WL 3457686, *2 (Del. Super. 2006). "Ambiguity only exists when the contract's terms are 'reasonably or fairly susceptible of different interpretations' or if the terms may have more than one meaning." Id. (citations omitted). "Contract terms, however, will not be twisted to create ambiguity if an ordinary reading leaves no room for uncertainty." Id. "If the language is clear and unequivocal, the parties are bound by its plain meaning." Id. Georgia Pacific's Contract Carriage Agreement with Western Express is unambiguous.

### Construction of Contract Carriage Agreement

The Contract Carriage Agreement provides a defense to Georgia-Pacific and its subsidiaries for the injury of a person in three instances: (1) for injuries arising out of or predicated upon the operation of trucks of or by CARRIER, its agents or employees, (2) for injuries arising out of or predicated upon the conduct of the business of CARRIER, or (3) for injuries arising out of or predicated upon the transportation and handling of goods by CARRIER, its agents or employees *whether pursuant to this Agreement or otherwise*. The Court must first address the significance of the italicized language in the context of this case.

The inclusion of the "whether pursuant to this Agreement or otherwise" language in the third instance, combined with the absence of similar language in the first two instances, indicates that the parties did not intend the modifier "or otherwise" to apply in the first two instances. "It is a basic tenet of contract law that specific clauses cannot be read in isolation, but must be construed within the context of the entire instrument, giving effect to all of its provisions and avoiding a construction which render any of the provisions illusory or meaningless." In re Blue Rock Manor Civic Ass'n v. Hartline, 1992 WL 251381 (Del. Ch. Sept. 29, 1992)(citing Hudson v. D & V Mason Contractors, Inc., 252 A.2d 166 (Del. Super. 1969)). Therefore, under the basic

11

tenant of contract law, a defense is required in the first two instances if the injury arises out of the operation of trucks or the conduct of Western Express' business pursuant to the Agreement. A defense is required in the third instance if the injury arises out of the transportation and handling of goods pursuant to the Agreement *or otherwise.*

### A. Arising Out of the Operation Trucks or Conduct of Western Express' Business

The injury to Black did not arise out of the performance of the Contract Carriage Agreement with Western Express. As discussed in the previous section, both Plaintiff Steve Black and forklift operator Larry Chinn testified that at the time of Black's injuries he was removing dunnage or trash from the trailer and transporting it to the trash compactor. Black had completed the delivery of the raw paper materials to the Dixie facility at the time the injury occurred, and he had requested permission to remove trash from the trailer to prepare for his *next load*. Accordingly, at the time of his injury, Black was not engaged in the operation of trucks nor was he engaged in the conduct of the business of Western Express *pursuant to the Agreement*. Therefore, no defense is owed under the Contract Carriage Agreement in the first two instances.

### B. Arising Out of the Transportation and Handling of Goods

As discussed, the inclusion of the term "whether pursuant to this Agreement or otherwise" in the third instance reflects that Western Express contracted to indemnify Georgia Pacific for injuries arising out of the transportation and handling of goods by Western Express, not only done pursuant to the Contract Carriage Agreement, but **otherwise**. While Western Express is correct that Black had completed the delivery of the raw paper materials to the Dixie facility pursuant to the Agreement at the time of his injury, Western Express also concedes that Black requested to remove trash from the trailer to prepare for his *next load*. Under the clear

language of the indemnification section of the Contract Carriage Agreement, Western Express owes a defense to Georgia Pacific if Black's injuries arose out of the transportation and handling of goods. The question now becomes whether the injuries arose out of the transportation and handling of goods.

In that connection, the term "arising out of" is broadly construed under Delaware law. The Delaware Supreme Court in Pacific Ins. Co. v. Liberty Mutual Ins. Co. instructed that the definition of the term "arising out of," in the context of insurance policies, "should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with'—that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense." 956 A.2d 1246, 1257 n. 42 (Del. Super. 2008)(quoting Federal Ins. Co. v. Tri–State Ins. Co., 157 F.3d 800, 804–05 (10th Cir. 1998)). See also Lillis v. AT &T Corp., 904 A.2d 325, 331 (Del. Ch. 2006).[5]

As discussed, both Plaintiff Steve Black and forklift operator Larry Chinn testified that at the time of Black's injuries he was removing dunnage or trash from the trailer and transporting it to the trash compactor in an effort to prepare his trailer for his next load. Applying Delaware law, the Court finds that the removal of dunnage or trash grows out of, flows from, or is done in connection with the transportation and handling of goods. Trash removal was a necessary component to the preparation of Western Express' next load of goods. Black testified that the trailer had to be immaculate for the load to be approved by the beer company. Therefore, a duty to defend exists under the Contract Carriage Agreement absent the application of the sole negligence exclusion.

---

[5] Western Express did not dispute Dixie and Georgia-Pacific Consumer Products Holdings' application of this definition of the term "arising out of."

### C. Sole Negligence Exclusion

Western Express argues that it is entitled to summary judgment because the Agreement relieves it of any obligation to indemnify, defend, or hold harmless Dixie and Georgia-Pacific Consumer Products Holdings for injuries caused by the sole negligence of Dixie and Georgia-Pacific Consumer Products Holdings. Paragraph 7 of the Agreement, entitled "Indemnification," provides in relevant part:

> CARRIER agrees to assume all risks growing out of or occurring in the performance of this Agreement by CARRIER, its agents or employees for: . . .
>
> (b) any death or injury to any person or persons, whether or not employed by the CARRIER, however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed as a result of negligence on the part of the carrier, **except when caused by the sole negligence, or intentional acts of GP, its agents and employees.**
>
> (c) CARRIER further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, **to defend, save harmless and indemnify** GP from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, *arising out of* or predicated upon the operation of trucks of or by CARRIER, its agents or employees, or the conduct of the business of CARRIER, or the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise, **provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was solely caused by any negligent act or omission of GP.**

(Contract Carriage Agreement ¶ 7 (emphasis added).) Western Express maintains that since the only allegation of negligence asserted by Black is against Dixie and Georgia Pacific Consumer Products Holdings at their own facility, Western Express is relieved of "all risks growing out of [the Agreement]," including any alleged duty to defend.

14

### 1. Qualified Duty to Defend

Dixie and Georgia-Pacific Consumer Products Holdings first argue that under the language of ¶ 7(c), only the duty to hold harmless and indemnify is subject to the sole negligence exclusion. Specifically, they argue that in the second line of ¶ 7(c), the terms "to defend, save harmless and indemnify" were used to define the duties owed, but in the sole negligence exception at the end of the paragraph, the term "to defend" was omitted; and thus, only the duty to hold harmless and indemnify is subject to the sole negligence exclusion. In other words, Dixie and Georgia-Pacific Consumer Products Holdings argue that Western Express owes them a duty to defend even if the injuries were caused by their sole negligence.

Delaware courts adhere to the objective theory of contract construction and "ascribes to the words [in the contract] their 'common or ordinary meaning.'" Smartmatic Intern. Corp. v. Dominion Voting Systems Intern. Corp., 2013 WL 1821608 (Del. Ch. May 1, 2013). Further, Delaware courts interpret and construe contracts as a whole. Kuhn Constr., Inc. v. Diamond State Port Corp., 990 A.2d 393, 396 (Del. 2010). Applying these rules of construction, Dixie and Georgia-Pacific Consumer Products Holdings' proposed construction of the exception clause of ¶ 7(c) is inconsistent with the plain reading of the rest of the paragraph. The Court concludes "[w]hen the exculpatory clause refers to '*this* hold harmless and indemnity,' it clearly refers to the paragraph's earlier defined duties '*to defend*, save harmless *and* indemnify". Bruce v. Georgia-Pacific, LLC, 757 S.E.2d 192, 197 (Ga. App. 2014). See also Georgia-Pacific LLC v. Hornady Truck Line, Inc., 2009 WL 484629, *4 (N.D. Miss. Feb. 26, 2009). Therefore, contrary to Third-Party Plaintiffs' argument, Western Express' duty to defend is also limited by the sole negligence exclusion clause.

### 2. Sole Negligence

Western Express argues that it is not obligated to defend Dixie and Georgia-Pacific Consumer Products Holdings because the duty to defend is never triggered as required by Delaware law because Plaintiff Black does not allege any claims or theories of relief against Western Express. Instead, the only allegation of negligence asserted by Black is against Dixie and Georgia Pacific Consumer Products Holdings at their own facility. Virtual Business Enterprises, LLC v. Maryland Cas. Co., 2010 WL 1427409, *4 (Del. Super. 2010)("The duty to defend arises where the insured can show that the underlying complaint, read as a whole, alleges a risk potentially within the coverage of the policy."); Continental Cas. Co. v. Alexis I. DuPont Sch. Dist., 317 A.2d 101, 103 (Del. 1974). Western Express' correctly points out that Black alleges in his original complaint that Dixie was negligent; however, it does not follow that these allegations alone end the inquiry in this contractual indemnity case.

The qualifying language in ¶7(c) of the Contract Carriage Agreement establishes that Western Express' obligation to defend does not apply if the action giving rise to the claim was *solely* caused by a negligent act or omission of Dixie or Georgia Pacific Consumer Products Holdings. The comparative fault of Plaintiff Black and Western Express has been pleaded by the Third-Party Plaintiffs and is at issue in this case. (Defendants' Answer, Third and Fifth Defense, DN 6.) Further, Black's actions are listed as one of the causes of the accident in Dixie's investigative report made following the incident and made prior to the litigation. Thus, the issue of whether the alleged negligence of Third-Party Plaintiffs "solely caused" the injury to Black remains in dispute, and accordingly, summary judgment is not appropriate.

### V.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the renewed motion by

Defendants, Dixie Consumer Products LLC and Georgia-Pacific Consumer Products Holdings LLC, for summary judgment against Plaintiff, Steve Black, [DN 84] is **DENIED.**  The motion in limine by Plaintiff to exclude the expert witness testimony of Charles W. Clowdis, Jr., pursuant to Fed. R. Evid. 702 [DN 100] is **MOOT**.

**IT IS FURTHER ORDERED** that the renewed motion by Third-Party Defendant, Western Express, Inc., for summary judgment against Third-Party Plaintiffs, Dixie Consumer Products LLC and Georgia-Pacific Consumer Products Holdings LLC, [DN 112] is **DENIED**.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

August 11, 2015