UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:08CV-00142-JHM

STEVE BLACK                                                           PLAINTIFF

V.

DIXIE CONSUMER PRODUCTS LLC and
GEORGIA-PACIFIC CONSUMER PRODUCTS
HOLDINGS, LLC                                                         DEFENDANTS/
                                                         THIRD-PARTY PLAINTIFFS

V.

WESTERN EXPRESS, INC.                                    THIRD-PARTY DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion by Defendants/Third-Party Plaintiffs, Dixie Consumer Products LLC and Georgia-Pacific Consumer Products Holdings LLC, for the entry of summary judgment on their third-party claims against Third-Party Defendant, Western Express, Inc. and on the counterclaim asserted against them by Western Express [DN 113] and on a motion by Third-Party Defendant, Western Express, Inc., to dismiss Third-Party Plaintiffs' third-party complaint with prejudice [DN 163]. Fully briefed, these matters are ripe for decision.

I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

On July 11, 2008, Plaintiff, Steve Black, sustained an injury while on the business premises of Dixie Consumer Products LLC (hereinafter "Dixie") in its Bowling Green, Kentucky, plant. Plaintiff was at the Dixie facility to deliver a shipment of rolled paper materials to the plant. While Plaintiff was on the loading dock, an employee of Dixie who was unloading the truck ran over Plaintiff with a forklift/lift truck. Plaintiff sustained an injury to his left foot resulting in a below-the-knee amputation of his leg. At the time of the accident, Plaintiff was employed by Western Express, Inc., a commercial carrier that had contracted for shipping services with Georgia-Pacific LLC, Dixie's parent corporation. Jeff Gottke, Dixie's Bowling Green Plant Director, testified that the subject shipment occurred under the terms of this contract.

Following his injury, Plaintiff pursued a workers' compensation claim against his employer, Western Express. Plaintiff testified that he was acting within the course of his employment with Western Express when he sustained his injuries. Western Express secured the payment of workers' compensation for Plaintiff as part of his employment with that company for the injuries sustained as a result of the accident.

In October of 2008, Plaintiff filed suit against Dixie Consumer Products and Georgia-Pacific Consumer Products Holdings alleging that he was "negligently injured by the agents, servants, and employees of Defendants." (Complaint at ¶ 4.) Defendants filed responsive pleadings denying liability for the injuries sustained by the Plaintiff. In addition, Defendants affirmatively pleaded that Plaintiff's claims are barred by the exclusive remedy sections of the Kentucky Workers' Compensation Act. Defendants argued that they are "statutory employers" within the provisions and definitions in KRS § 342.610(2)(b) and KRS § 342.690. The Court entered a scheduling order allowing for discovery to be taken on the statutory employer defense. The parties then filed cross-motions for summary judgment on this threshold issue.

The Court originally granted summary judgment in favor of the Defendants finding that the Plaintiff's complaint against them was barred by the exclusive remedy of workers' compensation. The Court found that transportation of raw paper materials to Dixie is a regular and recurrent part of Dixie's business operations. Plaintiff appealed to the Sixth Circuit. A three-judge panel of the Sixth Circuit reversed the summary judgment entered by the Court and remanded the case for further proceedings. The Sixth Circuit concluded that because Dixie and Georgia Pacific had not established that the work Black performed at the time of his injury was a "regular or recurrent" part of its work, Defendants were not entitled to judgment as a matter of law. On remand, the Plaintiff was allowed to amend his complaint against the Defendants. The

Defendants were permitted to file a third-party complaint against Western Express for breach of contract for failing to defend and indemnify them in this case pursuant to the Contract Carriage Agreement. Western Express also filed a counterclaim against Defendants/Third-Party Plaintiffs alleging a subrogation claim for the workers' compensation benefits secured for Plaintiff.

On April 30, 2014, the Court denied Western Express' motion for summary judgment on the third-party claim asserted against it by Dixie and Georgia-Pacific Consumer Products Holdings. The Court rejected Western Express' lack of privity argument finding that the Contract Carriage Agreement expressly intended for the Georgia-Pacific subsidiaries to be direct beneficiaries of the agreement. The Court also concluded that Western Express had not established that Plaintiff's accident was "solely caused" by Dixie and Georgia-Pacific to extinguish Western Express' obligation to indemnify or defend.

Dixie, Georgia-Pacific, and Western Express renewed their motions for summary judgment. Relying on the Sixth Circuit opinion in this case, the Court denied summary judgment in favor of Dixie and Georgia Pacific finding that they were not entitled to the protection of the statutory employer defense. The Court also denied the parties' cross-motions for summary judgment on Dixie and Georgia-Pacific's claim finding the issue of whether the alleged negligence of Third-Party Plaintiffs "solely caused" the injury to Black remains in dispute.

Defendants appealed to the Sixth Circuit. On August 29, 2016, the Sixth Circuit reversed the denial of summary judgment finding that Defendants were entitled to statutory immunity from Plaintiff's suit. Plaintiff filed a petition for writ of certiorari which was denied by the Supreme Court of the United States on June 26, 2017. The Court has now entered summary judgment in favor of Defendants on Plaintiff's claim.

Dixie and Georgia Pacific's third-party claim against Western Express and Western Express' counterclaim against Dixie and Georgia-Pacific remain. The parties have now filed dispositive motions on the remaining claims.

### III. THIRD-PARTY COMPLAINT

Dixie and Georgia-Pacific move for summary judgment on their third-party claim against Western Express for breach of contract for failing to defend and indemnify them in this case pursuant to the Contract Carriage Agreement [DN 113]. Western Express filed a cross-motion to dismiss the third-party complaint with prejudice [DN 163].

**A. Contract Carriage Agreement and Court's Previous Decision**

The Contract Carriage Agreement provides that Western Express shall defend, save harmless, and indemnify Georgia-Pacific and its subsidiaries for all costs of any sort on account of the injury of a person "arising out of or predicated upon the . . . the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise." (Contract Carriage Agreement ¶ 7.)

In analyzing the contract, the Court previously held that Georgia-Pacific's Contract Carriage Agreement with Western Express is unambiguous. The Court found that the Contract Carriage Agreement provides such indemnity to Georgia-Pacific and its subsidiaries for the injuries "arising out of or predicated upon . . . the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise," unless the action giving rise to the claim was solely caused by the negligent act or omission of Georgia Pacific. (Id.) Specifically, the Court concluded that the removal of dunnage or trash grows out of, flows from, or is done in connection with the transportation and handling of goods. Trash removal was a necessary component to the preparation of Western Express' next load of goods.

5

Black testified that the trailer had to be immaculate for the load to be approved by the beer company. Accordingly, a duty of indemnification exists in favor of Georgia-Pacific under the Contract Carriage Agreement absent the application of the sole negligence exclusion. The Court further concluded that the issue of whether the alleged negligence of Georgia-Pacific "solely caused" the injury to Black remains in dispute.

### B. Western Express' Motion to Dismiss [DN 163]

Western Express moves to dismiss Dixie and Georgia-Pacific's third-party complaint for failure to state a claim upon which relief can be granted arguing that "indemnify, defend, or hold harmless" clauses in a motor carrier transportation contract are against public policy in Kentucky and are void and unenforceable pursuant to KRS § 281.592.[1]

*1. Waiver of Choice of Law Argument*

The Contract Carriage Agreement provides that it "shall be interpreted in accordance with the laws of the state of Delaware." Western Express argues that regardless of the choice of law clause contained in the Contract Carriage Agreement, Kentucky law should govern the contract dispute. Dixie and Georgia-Pacific argue, however, that Western Express waived its choice-of-law argument by failing to raise it earlier in the proceedings. In Dixie and Georgia-Pacific's view, the Court should apply the law of Delaware as specifically provided in the Contract Carriage Agreement.

Choice-of-law arguments are subject to waiver. Dolmage v. Combined Ins. Co. of Am., 2017 WL 5178792, at *4 (N.D. Ill. Nov. 8, 2017)(citing Vukadinovich v. McCarthy, 59 F.3d 58, 62 (7th Cir. 1995) (observing that "choice of law, not being jurisdictional, is normally . . .

---

[1] In as much as Western Express incorporates by reference each of its arguments set forth in its previously filed motion for summary judgment, the Court adopts its previous decision regarding Western Express' lack of privity argument and finds that the contract carriage agreement expressly intended for the Georgia-Pacific subsidiaries to be direct beneficiaries of the agreement.

waivable").[2] But the Court does not believe that Western Express waived its choice-of-law argument in this case.

Counsel for Dixie and Georgia-Pacific is correct that the Court utilized Delaware law in deciding Western Express' renewed motion for summary judgment. However, the Court never specifically made a choice-of-law decision. Black v. Dixie Consumer Products LLC, 2015 WL 4776903 (W.D. Ky. Aug. 12, 2015). [DN 134.] Notably, in addressing the Delaware case law cited by Dixie and George-Pacific, Western Express never conceded that Delaware law applied. Furthermore, in its reply, Western Express repeatedly addressed the legal arguments raised by Third-Party Plaintiffs without indicating, one way or another, "whether Kentucky or Delaware contract construction law [should be] applied." (Reply, DN 119, at 4.) Western Express has now raised the issue in connection with its motion to dismiss, arguing that Dixie and Georgia Pacific's claim is governed by Kentucky law. "This is not a situation . . . where a party has 'explicitly submitted' to the law of the forum state, Lott v. Levitt, 556 F.3d 564, 568 (7th Cir. 2009), or where a party has so unduly delayed in raising a choice-of-law argument that waiver should be found, see Whirlpool Fin. Corp. v. Sevaux, 96 F.3d 216, 221 (7th Cir. 1996) (holding that party waived choice-of-law argument by failing to raise it "until after summary judgment had been rendered against him")." Dolmage, 2017 WL 5178792, at *4. Under the circumstances, the Court declines to find that Western Express waived its choice-of-law argument.

---

[2] See also Woodard v. Victory Records, Inc., 2014 WL 2118799, at *5 (N.D. Ill. May 21, 2014) (finding that plaintiffs waived their argument that California law applied to parties' dispute by citing solely to Illinois law in their briefs and remaining silent when the court applied Illinois law and explicitly noted that the choice of law was "not in dispute"); Meridia Products Liability Litigation v. Abbott Laboratories, 447 F.3d 861 (6th Cir. 2006)(Sixth Circuit found choice-of-law issue waived where the parties did not raise the argument and the court relied upon law brought to the court's attention by the parties); Womack v. Wal-Mart Stores, Inc., 2017 WL 715898 (6th Cir. Feb. 23, 2017)(same).

## 2. Choice of Law

"'Federal courts hearing cases based on diversity must determine which state's law to apply to the case. This begins with an analysis of the choice-of-law rules of the forum state.'" Pogue v. Principal Life Ins. Co., 2015 WL 5680464, *4 (W.D. Ky. Sept. 25, 2015)(quoting Wells Fargo Financial Leasing, Inc. v. Griffin, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013)).

Kentucky employs the "most significant relationship" test to resolve choice of law questions in a contract dispute, even where the contract contains a choice-of-law provision. Hackney v. Lincoln National Fire Insurance Company, 657 Fed. Appx. 563, 570 (6th Cir. 2016); State Farm Mut. Auto Ins. Co. v. Hodgkiss–Warrick, 413 S.W.3d 875, 878 (Ky. 2013); Schnuerie v. Insight Communications Co., 376 S.W.3d 561, 566-67 (Ky. 2012); Restatement (Second) of Conflict of Laws § 188. "Courts should consider the following factors in determining which state has the most significant relationship to the transaction: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the location of the subject matter of the contract; (4) the place of performance; and (5) the domicile, residence, nationality, place of incorporation and business of the parties." Acuity Brands, Inc. v. Bickley, 172 F. Supp. 3d 971, 981 (E.D. Ky. 2016), on reconsideration in part, 2017 WL 1426800 (E.D. Ky. Mar. 31, 2017); Restatement (Second) of Conflict of Laws, § 188(2)(a)-(e); American Towers LLC v. BPI, Inc., 2014 WL 4104165, at *2–3 (E.D. Ky. Aug. 18, 2014)(citing Hodgkiss–Warrick, 413 S.W.3d at 879).

In the present case, the Agreement was negotiated across state lines between Western Express, a company incorporated and with its principal place of business in Tennessee, and Georgia-Pacific, a limited liability company incorporated in Delaware, with its principal place of business in Georgia. The parties did not address the location of the execution of the contract.

From the record, it would appear that the contract was likely executed in either Georgia or Tennessee. Dixie is likewise a limited liability company incorporated in the state of Delaware. Plaintiff Black is a Tennessee resident. The Agreement did not limit performance to shipping services in Kentucky, but was national in scope. It is undisputed that the Agreement did not specifically refer to Kentucky. Furthermore, the Contract Carriage Agreement provides that it "shall be interpreted in accordance with the laws of the state of Delaware." The only Kentucky connection is the fact that Plaintiff Black's injury occurred at Dixie's plant in Bowling Green, Kentucky.

Based on this information, the "fortuitous fact that the accident occurred in Kentucky is far outweighed by the significant relationship" Delaware has with the parties and the Contract Carriage Agreement compared to Kentucky, and so, "absent some compelling reason not to apply our general choice-of-law rule, [Delaware] law should control." Hodgkiss-Warrick, 413 S.W.3d at 879.

### *3. Public Policy*

Western Express resists this conclusion, arguing that there is such a compelling reason to refrain from applying Delaware law, namely Kentucky public policy disfavoring "indemnify, defend, or hold harmless" clauses in a motor carrier transportation contract pursuant to KRS § 281.592. See, Hodgkiss-Warrick, 413 S.W.3d at 879-880. KRS § 281.592(2) provides:

> A provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract that purports to indemnify, defend, or hold the promisee harmless, or has the effect of indemnifying, defending, or holding the promisee harmless, or requires a motor carrier to procure liability insurance covering the acts or omissions or both of the promisee, from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the promisee, is against public policy and is void and unenforceable.

9

KRS § 281.592 (effective July 15, 2014). Western Express maintains that pursuant to the express language of KRS § 281.592(2) the "indemnify, defend, and hold harmless" clauses in the Contract Carriage Agreement violate Kentucky public policy, and are void and unenforceable.

In response, Dixie and Georgia-Pacific argue that the statute relied on by Western Express, KRS § 281.592, was enacted in 2014. It did not exist when the Contract Carriage Agreement was executed in February 2008, when Plaintiff's accident occurred in July 2008, when Plaintiff's lawsuit was filed in October 2008, or when Dixie was allowed to assert its third-party complaint in June 2013. Thus, at all relevant times, there was no Kentucky public policy in place by statute or judicial opinion which attempted to make contractual indemnity provisions unenforceable. Dixie and Georgia-Pacific maintain that KRS § 281.592 was not intended to have a retroactive effect. Dixie and Georgia-Pacific additionally argue that even if the Court were to give KRS § 281.592 retroactive application, the outcome would still be the same under Hodgkiss-Warrick, 413 S.W.3d 875, because no Kentucky resident is affected by the application of the "indemnify, defend, and hold harmless" clauses.

"The choice of law analysis . . . does not end with application of the [most significant relationship] test. Kentucky will override the outcome of the 'most significant relationship' test and apply its own laws if 'a clear and certain statement of strong public policy in controlling laws or judicial precedent' would be violated in applying another state's laws." Henry v. Travelers Pers. Security Ins. Co., 2018 WL 678282, at *3 (Ky. Ct. App. Feb. 2, 2018)(quoting Hodgkiss–Warrick, 413 S.W.3d at 880). "'[P]ublic policy, invoked to bar the enforcement of a contract, is not simply something courts establish from general considerations of supposed public interest, but rather something that must be found clearly expressed in the applicable law.'" Henry, 2018 WL 678282, at *3 (quoting Hodgkiss–Warrick, 413 S.W.3d at 880-81)(citing

Kentucky Farm Bureau Mut. Ins. Co. v. Thompson, 1 S.W.3d 475, 476–77 (Ky. 1999)). "Absent an express prohibition, public policy will render contract terms unenforceable only if: (1) 'the policy asserted against it is clearly manifested by legislation or judicial decision[;]' and (2) the policy 'is sufficiently strong to override the very substantial policies in favor of the freedom of contract and the enforcement of private agreements.'" Henry, 2018 WL 678282, at *3 (quoting Hodgkiss–Warrick, 413 S.W.3d at 880).

Because of Kentucky's strong preference in upholding valid, private agreements, "it is insufficient to merely find that there is a strong public policy to override the 'most significant relationship' test." Henry, 2018 WL 678282, at *3 (quoting Hodgkiss–Warrick, 413 S.W.3d at 882). "The critical question is 'whether the public policy [is] so strong as to require a Kentucky court to interject Kentucky law into a dispute having none but a fortuitous connection with Kentucky.'" Id. Therefore, "[t]o bar enforcement in the case where the contract was valid where made, the Kentucky public policy against enforcement must be a substantial one, a 'well-founded rule of domestic policy established to protect the morals, safety or welfare of *our people*.' Where no Kentucky resident has been affected, rarely will that standard be met." Id. (emphasis in original) (citation omitted) (quoting R.S. Barbee & Co. v. Bevins, Hopkins & Co., 195 S.W. 154, 155 (1917)).

In the present case, assuming for purposes of this motion that the statute in question is retroactive, the Court would find that given the statutory language in question there is a strong public policy against the "indemnify, defend, and hold harmless" clauses in motor carrier transportation contracts. However, this policy is not strong enough to require the Court to interfere with this dispute. "'[T]he fact that a contract, if made in Kentucky, would not be enforceable as a matter of public policy, does not necessarily mean that it is against public policy

11

to enforce such a contract when valid where made.'" Henry, 2018 WL 678282, at *5 (quoting Hodgkiss–Warrick, 413 S.W.3d at 882). "'Since here no Kentucky resident is affected, nothing requires a Kentucky court to interfere with the balance [Delaware] has chosen for its citizens." Henry, 2018 WL 678282, at *5 (quoting Hodgkiss–Warrick, 413 S.W.3d at 883). Accordingly, the Court finds that Delaware law applies to the dispute and, as a result, the "indemnify, defend, and hold harmless" clause is enforceable under Delaware law.[3]

For these reasons, the motion by Western Express to dismiss the third-party complaint with prejudice [DN 163] is **denied**.

**C. Dixie and Georgia-Pacific's Motion for Summary Judgment [DN 113]**

On February 26, 2105, Dixie and Georgia-Pacific filed this motion for summary judgment on their third-party claim against Western Express. The motion was held in abeyance while Dixie and Georgia-Pacific appealed the issue of whether they were entitled to statutory immunity from suit based upon the exclusive remedy sections of the Kentucky Workers' Compensation Act. KRS § 342.610. After the Sixth Circuit resolved that issue, Magistrate Judge Brennenstuhl entered an order allowing the completion of briefing on this motion.

In their motion, Dixie and Georgia-Pacific argued that (1) Western Express has an unqualified duty to defend them on the claims asserted by Black; (2) Western Express failed to obtain liability insurance to cover the defense of Plaintiff's lawsuit against the Defendants and failed to have Defendants listed as an additional insureds under its insurance policies, and as a result, was liable for those costs; and (3) Western Express' support of Dixie and Georgia-Pacific's invocation of the statutory right to tort immunity is a binding admission precluding Western Express from subsequently contending that Dixie and Georgia-Pacific were at fault,

---

[3] Western Express does not contend that Delaware law prohibits enforcement of "indemnify, defend, and hold harmless" clauses in motor carrier transportation contracts. (Western Express Reply, DN 170, at 9-10.)

much less solely at fault, for the Plaintiff's accident. Furthermore, in their reply, Dixie and Georgia-Pacific argue that the Court's subsequent summary judgment on Plaintiff's claims triggers Western Express' contractual indemnity obligation under the Contract Carriage Agreement, and as a result, summary judgment is warranted on their third-party claim.

### *1. Duty to Defend and Sole Negligence*

The majority of the issues raised by Dixie and Georgia-Pacific in this motion were also addressed by the parties in response to Western Express' renewed motion for summary judgment. [DN 112.] The Court rejected these arguments in its August 12, 2015, Memorandum Opinion and Order [DN 134]. Specifically, the Court held that Western Express' duty to defend is limited by the sole negligence exclusion clause and that whether the alleged negligence of Third-Party Plaintiffs "solely caused" the injury to Black is a disputed issue of fact. In as much as these arguments have been previously addressed, the motion for summary judgment is denied.

### *2. Dixie and Georgia-Pacific's Summary Judgment on Plaintiff's Claims*

Dixie and Georgia-Pacific argue that because they obtained a summary judgment on the claims asserted by Plaintiff by virtue of the Sixth Circuit's ruling and Western Express supported that outcome, they cannot be found negligent for the claim brought by Plaintiff, are immune from a tort suit and resultant liability, and are entitled to summary judgment on their third-party indemnity claim. [DN 169.]

Paragraph 7(c) of the Contract Carriage Agreement states that Western Express will "defend, save harmless and indemnify" Georgia-Pacific "from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated

13

upon" " the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise, provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was solely caused by any negligent act or omission of GP." (Contract Carriage Agreement, ¶ 7(c)).

Essentially, Dixie and Georgia-Pacific argue that because they obtained a summary judgment on Plaintiff's claim by virtue of workers' compensation statutory immunity, Western Express' contractual indemnity obligation under Paragraph 7(c) is triggered and Western Express must indemnify and hold harmless Dixie and Georgia-Pacific for having to defend the Plaintiff's lawsuit. The Court disagrees.

First, Dixie and Georgia-Pacific's reliance on <u>Konecranes, Inc. v. Central Motor Wheel of America, Inc.</u>, 642 Fed. Appx. 554 (6th Cir. 2016) is misplaced. <u>Konecranes</u> does not apply Delaware law which is the law applicable to the Contract Carriage Agreement. Notwithstanding, <u>Konecranes</u> is also distinguishable from the present case. In <u>Konecranes</u>, the Sixth Circuit affirmed the district court's finding that there were no facts in the record that the plaintiff's injury resulted from any act or omission by company. In contrast, in the present case, the record reflects that Dixie's employee, Larry Chinn, allegedly violated Dixie's own policies and ran over Plaintiff Black while he was driving Dixie's fork lift in Dixie's facility. In the Court's April 30, 2014, Memorandum Opinion and Order, the Court previously determined that Plaintiff's Black allegation of negligence against Dixie, coupled with Dixie's allegations of Plaintiff Black's and Western Express' negligence, created a genuine issue of material fact of whether the alleged negligence of Third-Party Plaintiffs "solely caused" the injury to Black. Accordingly, summary judgment is not appropriate.

Second, workers' compensation statutory immunity from suit does not relieve Third-Party Plaintiffs from proving their breach of contract claim. Under the Contract Carriage Agreement, one of the issues that must be resolved is whether Third-Party Plaintiffs and/or their employee solely caused the injury to Black. The determination by the Court that Dixie and Georgia-Pacific are the workers' compensation statutory employer of Black does not mean that Dixie was not at fault and/or negligent in causing Plaintiff Black's injuries.

Third, Third-Party Plaintiffs argue that Western Express cannot prevail on its allegation that Dixie or its employee caused the accident. Third-Party Plaintiffs contend that discovery is closed and Western Express never disclosed an expert witness to opine on any fault or causation by Dixie. Third-Party Plaintiffs also argue that Western Express cannot use Plaintiff's disclosed expert witness because it never disclosed them. As such, they argue that the Court is left only with Dixie's expert disclosure from engineer Kevin Rider who opined that Dixie provided sufficient training to Black, did not violate its pedestrian safety policy, and Black's decision to walk behind the operating forklift was the primary cause of the collision.

The Court finds there is sufficient evidence in the record to support the allegation by Western Express that Dixie was negligent. As noted by Western Express, Dixie's employee, Larry Chinn, admitted that he ran over Plaintiff Black while he was driving Dixie's fork lift in Dixie's facility in Bowling Green, Kentucky. Whether or not the jury will conclude from this evidence that the injuries to Black were caused solely by the negligence of Georgia-Pacific remains to be seen.

For these reasons, the motion for summary judgment by Dixie and Georgia-Pacific on their third-party claim against Western Express is denied.

## IV. COUNTERCLAIM

Dixie and Georgia-Pacific seek summary judgment on Western Express' counterclaim. Western Express asserts a subrogation counterclaim against Dixie for the workers' compensation benefits it secured for Plaintiff Black following the accident at the Dixie Plant in 2008. Essentially, Western Express argues that it should be able to recoup benefits paid and payable to Black because it is entitled to subrogation from a third-party tortfeasor, Dixie, pursuant to KRS § 342.700[4] and equitable law. Western Express contends that Dixie is a third-party tortfeasor in this case, whose employee negligently injured Black, and is thus liable to Western Express. In contrast, Dixie and Georgia-Pacific maintain that the subrogation claim is derivative of Plaintiff Black's claims against Dixie, and because Plaintiff's claims against Dixie fail as a matter of law, then Western Express' subrogation claim also fails.

First, the Kentucky Court of Appeals has rejected Western Express' argument recently in Bowman v. Meadowview Regional Med. Ctr., LLC, 2016 WL 4575659, at *3 (Ky. App. Sept. 2, 2016). Relying on this case law, the Court finds that Dixie, as a contractor utilizing Western Express as a subcontractor as defined under KRS § 342.610(2), "is not a third-party tortfeasor against whom [Western Express] may exercise its right to subrogation for benefits paid to [Black] since [Dixie] fits the statutory definition for an 'employer.'" Bowman, 2016 WL 4575659, at *3 (citing KRS § 342.690(1)). Accordingly, Western Express "is not entitled to recoup those benefits." Bowman, 2016 WL 4575659,

Furthermore, even if the Court were to consider Dixie a "third-party tortfeasor" for purposes of the subrogation claim, Western Express could not recover against Dixie under the

---

[4] KRS § 342.700 provides in relevant part that "[i]f compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense. . . ."

facts of this case. Workers' compensation insurer's rights, including the rights of Western Express in this case, as subrogee to Black "are strictly derivative of any claims [Black] may pursue against [Dixie and Georgia-Pacific]." Bridgefield Cas. Ins. Co. v. Yamaha Motor Mfg. Corp. of Am., 385 S.W.3d 430, 433 (Ky. App. 2012)(citing Zurich Am. Ins. Co. v. Haile, 882 S.W.2d 681, 685 (Ky. 1994)); Wine v. Globe Am. Cas. Co., 917 S.W.2d 558, 566 (Ky. 1996) ("All subrogation rights are derivative and the insurer only acquires the rights of its insured."). Similarly, "'[t]he third party may interpose all defenses against the employer or his insurance carrier that he could invoke against the employee or his personal representative.'" AIK Selective Self Ins. Fund v. Bush, 74 S.W.3d 251, 254 (Ky. 2002)(quoting Napier v. John P. Gorman Coal Co., 45 S.W.2d 1064, 1066 (Ky. 1931)). As a result, any defenses asserted against Black in this case may likewise be asserted against Western Express, as subrogee to Black, including the Workers' Compensation statutory employer immunity defense.

Second, while Western Express argues that it is permitted to assert a subrogation and indemnity claim against Dixie under equitable law and common law, Western Express has not cited any case law that would support such a conclusion under the facts of this case. Here, subrogation under workers' compensation is governed by statute. In fact, as discussed above, Kentucky courts have specifically held that a contractor who qualifies as a statutory employer cannot be deemed a third-party tortfeasor and cannot be sued by a worker, the employer, or the employer's insurance company for recovery of workers' compensation benefits. Commentators support this conclusion noting that "[c]ommon-law rules for equitable subrogation do not apply to third-party tort actions arising from workers' compensation claims." Statute Specifies Sole Basis for Subrogation, 16 Couch on Ins. § 225:171 (citing, e.g., Threshermens Mut. Ins. Co. v. Page, 577 N.W.2d 335 (1998)). See also Evansville Printing Corp. v. Sugg, 817 S.W.2d 455, 457

17

(Ky. App. 1991) (Workers' Compensation Act evidences legislative policy and supersedes common law).

For these reasons, the Court grants Dixie and Georgia-Pacific's motion for summary judgment on the Western Express' counterclaim.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Third-Party Plaintiffs, Dixie Consumer Products LLC and Georgia-Pacific Consumer Products Holdings LLC, for the entry of summary judgment on their third-party claims against Third-Party Defendant, Western Express, Inc. and on the counterclaim asserted against them by Western Express [DN 113] is **GRANTED IN PART AND DENIED IN PART.** Western Express' counterclaim is dismissed.

**IT IS FURTHER ORDERED** that the motion by Third-Party Defendant, Western Express, Inc., to dismiss Third-Party Plaintiffs' third-party complaint with prejudice [DN 163] is **DENIED**. This matter is referred to the Magistrate Judge for both a scheduling conference and a settlement conference.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

March 2, 2018